CARL R. CAMENISCH and WILLIE L. CAMENISCH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Camenisch v. Commissioner
Docket No. 2378-71.
United States Tax Court
T.C. Memo 1973-25; 1973 Tax Ct. Memo LEXIS 261; 32 T.C.M. (CCH) 92; T.C.M. (RIA) 73025; February 5, 1973, Filed *261 Held: The value of stock that petitioner received as compensation in 1967 determined to be $2 per share; Held, further: Petitioner was not entitled to any deduction for entertainment expenses in 1967. Henry J. Burt, Jr., for the petitioners. Philip G. Owens, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION. IRWIN, Judge: Respondent determined a deficiency in petitioners' income tax of $3,142.51 for the year ended December 31, 1967. Petitioners have conceded repondent's disallowance of $50 of their charitable contribution deduction, and the parties agree that petitioners' allowable medical expense deduction will have to be adjusted as a result 2 of our decision on the other issues. The issues for decision are the following: (1) whether shares of Harvcure Company, Inc. *262 , which petitioners received as commission income and salary in 1967, had a fair market value of $10 per share; and (2) whether petitioners are entitled to a deduction for entertainment expense. FINDINGS OF FACT Some of the facts have been stipulated and they are so found. Petitioners are Carl R. and Willie L. Camenisch, husband and wife, who for 1967 filed a joint income tax return with the district director of internal revenue, Louisville, Ky. At all relevant times, petitioners resided in Prospect, Ky. Hereafter the term petitioner shall refer solely to Carl R. Camenisch. Harvcure Company, Inc., was formed on June 17, 1963, to develop and market a tobacco curing machine which has been invented by petitioner. Although several prototype machines were developed, Harvcure was not able to produce a commercially viable machine. To the date of trial no machine had been completed or sold. Several problems plagued Harvcure's development of the machine. Although a prototype machine would cure tobacco, it operated at a speed that was too slow to be economical. Harvcure did not have the financial resources nor the talent 3 to produce a machine that was larger and faster *263 than the prototype. In addition, dissension among the shareholders and officers of Harvcure over the proper way of developing the machine prevented Harvcure from obtaining the resources needed to produce a salable machine. The ideas and principles of petitioner for the tobacco curing machine were theoretically sound and might have been used by a company with adequate resources to produce a successful machine; however, by 1967 it became unlikely that Harvcure would be able to do so. Petitioner was president of Harvcure from its inception on June 17, 1963, until May 30, 1968. Petitioner left the presidency of Harvcure when he believed that he no longer had the confidence of the other shareholders and officers of the company. In particular, petitioner had serious disagreements with R. B. Fenley who was both a substantial creditor and shareholder of Harvcure. Fenley wanted to gain control of the company so that he could sell the right to make the tobacco curing machine to another company. Petitioner wanted to develop and market the machine himelf. Between January 11, 1967, and August 8, 1967, Fenley purchased 3,900 shares of Harvcure stock from various shareholders with 1,900 *264 shares being purchased at $5 per share and 2,000 shares being purchased at $10 per share. 4 Between November 14, 1966, and September 30, 1968, 6,816 shares of Harvcure capital stock were issued for a consideration of $68,160 at a cost per share of $10. On February 10, 1967, petitioner was issued 250 shares of capital stock of Harvcure as commissions earned upon the sale by him of 1,000 shares of the capital stock of Harvcure. On June 20, 1967, the stockholders of Harvcure voted to issue 1,200 shares of Harvcure stock to petitioner as payment for services he rendered the corporation. These shares were issued to petitioner on October 5, 1967. One of the reasons for paying petitioner with stock for services rendered was to provide incentive to petitioner to work harder, complete the machine, and make it work. The books of Harvcure treated the issuance of 1,200 shares of stock to petitioner as a payment of salary in the amount of $12,000. Harvcure also included the $12,000 salary expense for the stock issued to petitioner on its income tax return for the taxable year ending September 30, 1967. Harvcure had no gross income in 1967 or in any prior year, and there was *265 little prospect that it would earn any income for the foreseeable future after 1967. For the taxable year ended September 30, 1967, Harvcure's total losses reported on its return exceeded $49,000. 5 On December 16, 1967, petitioner sold 250 shares of his Harvcure stock to Pennington Broecker for a price of $10 per share. At the time of this sale petitioner's sole employment was with Harvcure which was unable to pay him an adequate cash salary. Broecker, who was a friend of petitioner, purchased the Harvcure stock mainly in order to give petitioner funds to support his family. Harvcure stock was not sold on any market, nor was it offered for sale to the public. All sales of Harvcure stock were arranged privately by petitioner or other shareholders of the company. With the exception of Fenley, the purchasers of Harvcure stock bought small amounts of stock either because they were friends of petitioner or because they felt that the theory of the tobacco curing machine was sound. OPINION The major issue involved here is the value of 1,450 shares of Harvcure stock that petitioner received as commission income and salary from Harvcure in 1967. Petitioner did not report *266 the receipt of this property as income in 1967 based upon his belief that the stock had no value. Respondent relies upon a number of sales of Harvcure stock at a price of $10 per share to support his determination that petitioner failed to report $14,500 of income in 1967. We believe that the correct determination lies somewhere between the contentions of the parties. 6 At the time that petitioner received his stock progress on the development of the tobacco curing machine was at a standstill. Harvcure lacked capital, the prototype machine would not cure tobacco fast enough to be economically feasible, and there was dissension among the shareholders and officers of Harvcure. In 1967 the chances that a successful and marketable machine would be produced were remote. Accordingly, we find it difficult to believe that Harvcure shares were worth anything near $10 per share, and we tend to accept petitioner's explanation for the sale of a number of shares at this price. Petitioner claims that the sales of Harvcure stock were only casual transactions with individuals who were willing to invest small amounts of money in Harvcure without regard to the actual value of the stock *267 purchased either because they were friends of petitioner or because they were willing to gamble on the success of the machine. On the record we find petitioner's explanation more plausible than respondent's contention that the sales of shares at $10 set a market value for them at that price. Despite the poor prospects for Harvcure in 1967, we do not think that its stock was as worthless as petitioner contends. The principles incorporated in the tobacco curing machine were theoretically sound and they had some value to the corporation and its shareholders. Taking everything in 7 the record into consideration, we believe that shares of Harvcure stock were worth $2 each during 1967. Accordinly, we hold that petitioner should have included an additional $2,900 of compensation income in his return for 1967. The remaining issue is whether petitioner is entitled to any deduction for entertainment expenses for 1967. At trial petitioner admitted that he merely estimated his business entertainment expenses in claiming the deduction. Without cavil, petitioner's estimate of entertainment expenses without any supporting records does not come close to satisfying the requirements for *268 such deduction under section 274 of the 1954 Code. Therefore, we sustain respondent's disallowance of petitioner's deduction for entertainment expenses. Decision will be entered under Rule 50.